United States District Court
District of Massachusetts

|  |  |
|---|---|
| Travis Jones, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. |
| Commissioner of Social Security, ) | 20-11735-NMG |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Travis Jones ("Jones" or "plaintiff") seeks judicial review of the denial of his application for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") payments by Kilolo Kijakazi ("the Commissioner" or "defendant"), Acting Commissioner of the Social Security Administration ("the SSA").[1]  Pending before the Court are plaintiff's motion for an order reversing the Commissioner's decision (Docket No. 16) and defendant's motion to affirm that decision (Docket No. 17).  For the reasons that follow, plaintiff's motion will be denied and the Commissioner's motion will be allowed.

---

[1] The complaint originally named Commissioner Andrew Saul. Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

**I.     Background**

The plaintiff was born in July, 1994.  He was 20 years old in October, 2014, when he alleges he became disabled because of mental impairments including depression, post-traumatic stress disorder ("PTSD") and attention-deficit hyperactivity disorder ("ADHD").

Jones has held a variety of jobs, including as a laborer, a package handler, a carpenter's helper and an animal caretaker, but has struggled to maintain gainful employment.  He has been incarcerated and hospitalized for mental health treatment several times since the alleged onset of his disability.

**A. Medical Opinions**

On account of his medical conditions, plaintiff has consulted with numerous providers and specialists.  Summaries of the most relevant medical opinions, those of Doctors Rimma Kovalcik, Irene Piryatinsky and Russell Phillips, follow.

Doctor Kovalcik evaluated Jones's mental functioning in May, 2018.  She performed a consultative examination of Jones which consisted of several tests meant to gauge his mental capacity.  Jones was able to repeat items on immediate and delayed recall, count backwards from 100 by sevens (albeit with one mistake), reason abstractly and comprehend common proverbs. The testing indicated that Jones's ability to learn information presented verbally was in the average range but, with respect to

tasks requiring delayed memory, he fell within the "low average" range.

From her examination of the plaintiff and her evaluation of his medical history, Dr. Kovalcik concluded that Jones might have difficulty coping with social interactions. She found, however, that his attention span and ability to concentrate were intact and that he was able to handle tasks that required him to shift attention. She further opined that Jones would do better with more structured tasks and activities than those which would require him to process lengthy and detailed material. Finally, based upon her evaluation, Dr. Kovalcik diagnosed Jones with opioid addiction, attention deficit disorder and bipolar disorder.

Jones was referred to Dr. Piryatinsky for evaluation by his primary care physician. Dr. Piryatinsky performed an eight-hour neuropsychological assessment of Jones also in May, 2018. During the assessment, Jones reported that he had longstanding attention difficulties, dating back to his childhood and struggled with depression and anxiety. Dr. Piryatinsky observed that Jones was alert and cooperative but had low frustration tolerance, often becoming irritable when presented with complex tasks.

Dr. Piryatinsky's assessment consisted of 15 tests which indicated that Jones had intact auditory attention, problem

solving, language and memory function. She noted deficits, however, in self-monitoring, sustained attention, vigilance, impulse control and executive functioning. In sum, Dr. Piryatinsky concluded that Jones's overall intellectual capacity fell in the average range and diagnosed plaintiff with ADHD, major depressive disorder and an unspecified anxiety disorder. She recommended that Jones 1) abstain from marijuana use, which he reported using daily, 2) continue meeting with a psychiatrist and 3) attend therapy weekly.

With respect to employment, Dr. Piryatinsky found that Jones would thrive in a structured, organized and predictable workplace environment that allowed him to focus on one task at a time. She recommended that Jones work in low-stress, heavily supervised environments, during daytime hours, with untimed assignments, no distractions, clear expectations, a predictable schedule and frequent breaks.

In October, 2018, Dr. Phillips, a state-agency psychological consultant, made findings regarding plaintiff's functional limitations after review of record evidence, including medical reports of Dr. Kovalcik but not of Dr. Piryatinsky. Based on his review, Dr. Phillips identified Jones as having ADHD, depressive bipolar or related disorders and neurocognitive disorders. He assessed Jones as having mild limitations in two areas, first, in understanding, remembering

-4-

or applying information and, second, in adapting or managing himself. He made further findings of moderate limitation with respect to interacting with others and concentrating. With respect to Jones's functional capabilities, Dr. Phillips determined that he could understand and reliably recall simple information, maintain attention for two hours at a time and persist at simple tasks with normal supervision within standard daily and weekly limitations. In addition, he determined that Jones could tolerate the minimum social demands of simple-task settings but that Jones could not tolerate sustained contact with the public.

### B. Application for disability insurance benefits

On December 11, 2017, Jones filed claims for SSDI and SSI benefits alleging that, due to numerous mental health disorders, he had been unable to function or work since his disability onset date of October 1, 2014. Jones's claims were initially denied in May, 2018, and again upon reconsideration in October, 2018. After the second denial, he requested a hearing before an Administrative Law Judge ("ALJ") which was held before ALJ William Ross on August 13, 2019.

### C. The ALJ's decision

On October 29, 2019, ALJ Ross found that, subject to certain non-exertional limitations, Jones could perform a full range of work at all exertional levels. The ALJ further found

that Jones could return to his past work as a laborer/package handler or perform other jobs existing in the national economy. Accordingly, Jones was deemed not disabled under the Social Security Act.

In making that determination, the ALJ applied the standard five-step evaluation to Jones's disability claims. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Jones had not engaged in substantial gainful activity as that term is defined by those regulations since his alleged onset date of October 1, 2014.

At step two, the ALJ concluded that Jones had seven severe impairments, namely: 1) neurocognitive disorder secondary to a history of traumatic brain injury, 2) bipolar disorder, 3) anxiety disorder, 4) personality disorder, 5) attention deficit hyperactivity disorder, 6) post-traumatic stress disorder and 7) polysubstance abuse. At step three, the ALJ determined that none of those impairments, or any combination thereof, met or equaled the severity of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

Before proceeding to step four, the ALJ calculated Jones's residual functional capacity ("RFC"). See 20 C.F.R. § 404.1520(e). He found that Jones had the RFC to perform a full range of work at all exertional levels, subject to certain non-exertional limitations. Specifically, the ALJ concluded that

Jones could not work in a team where work-related interactions with co-workers and supervisors were constant or physically close and was limited to working with things and objects rather than with people.  The ALJ concluded that Jones could understand, remember and carry out basic instructions, perform simple, routine and repetitive tasks over a workday and interact occasionally with supervisors and co-workers.  In making those findings, the ALJ considered plaintiff's testimony and symptoms and determined that they were insufficient to establish limitations beyond those included in the RFC.

At step four, the ALJ found that Jones could return to past relevant work as a storage laborer/package handler because that work does not require the performance of activities beyond his RFC.  Finally, at step five, the ALJ determined that, considering Jones's age, education, work experience and RFC, there existed in significant numbers jobs in the national economy that he could perform.  Specifically, the ALJ determined, with the help of a vocational expert, that Jones possessed the RFC to perform occupations such as icer, car cleaner and parking garage sweeper.  Based on that finding, the ALJ concluded that Jones was not disabled for the purposes the Social Security Act and therefore was ineligible for the benefits sought.

### D. Jones's Appeals

After the ALJ rejected his claim, Jones timely filed a request for review with the Social Security Appeals Council ("the Appeals Council"). In July, 2020, the Appeals Council issued a decision denying review, rendering the ALJ's decision the final decision of the Commissioner.

In September, 2020, Jones filed his complaint in this court and shortly thereafter, a motion for an order reversing the Commissioner's decision. The Commissioner opposes that motion and moves for the Court to affirm that decision.

## II. Pending Motions

### A. Legal Standard

The Social Security Act gives district courts the authority to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A district court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard to the claims. See 42 U.S.C. § 405(g), Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998),

-8-

see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (stating that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high").

If both criteria are satisfied, the court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

### B. Application

Jones asserts that the ALJ erred in denying his claim for benefits because: 1) the RFC assessment relied on medical opinions that did not consider all of Jones's severe mental impairments and therefore were not supported by substantial evidence and 2) the vocational expert testimony was not supported by substantial evidence.

### 1. RFC Assessment

Jones contends that the ALJ failed to account for all his severe mental impairments when determining his RFC. For that reason, he submits that the determination was not supported by substantial evidence. Jones argues that the ALJ's RFC finding, which he claims "essentially adopted" the reports of Dr. Phillips and Dr. Kovalcik, is incompatible with the ALJ's finding that Jones had mental impairments beyond those diagnosed by those doctors, i.e. a personality disorder, PTSD and anxiety.

-9-

Because the ALJ purportedly failed to take into account the additional impairments the RFC is not supported by substantial evidence and the Court should reverse the Commissioner's decision.

The Commissioner begs to differ.  First, the she observes that a "mere diagnosis of a condition" does not assess its severity and does not necessarily bear on an RFC determination and she cites several cases to that effect from this circuit, see White v. Astrue, No. 10-10021, 2011 WL 736805 at *16 (D. Mass. Feb. 23, 2011), Rosario-Class v. Secretary of HHS, No. 90-1144, 1990 U.S. App. LEXIS 12917 (1st Cir. July 16, 1990). Second, the Commissioner argues that, while the doctors diagnosed different mental disorders, all were aware of plaintiff's history and symptoms and in any event the medical opinions were largely based upon Jones's performance on the tests administered to him and not upon any particular diagnosis. Finally, with respect to the diagnoses that Jones alleges were not accounted for in the RFC, the Commissioner states that Jones cannot satisfy his burden of showing that those disorders require additional restrictions, citing Pereira v. Berryhill, No. 16-11855, 2017 U.S. Dist. LEXIS 131413 at *19-20 (D. Mass. Aug. 17, 2017).

> A claimant's mental RFC is
>
> the most [he] can still do after considering the effects of
> . . . mental limitations that affect [his] ability to
> perform work-related tasks.

20 C.F.R. § 404.1545.  The ALJ is responsible for determining a claimant's RFC based on all relevant evidence in the record, including treatment notes, medical records, consultative examination findings and various medical opinions.  20 C.F.R. §§ 404.1545 (a)(1), 404.1546(c).  The RFC determinations by the ALJ must be supported by expert medical opinions, unless the claimant's impairments are "obvious to a layperson as a matter of common sense."  Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (finding that while an ALJ may render "common-sense judgments about functional capacity based on medical findings," he is not qualified to assess RFC based on a bare medical record).

The RFC determination by the ALJ was supported by substantial evidence. See Biestek, 139 S. Ct. at 1154 (explaining that substantial evidence means only "such evidence as a reasonable mind might accept as adequate to support a conclusion"). Notwithstanding the fact that the diagnoses of the medical providers were not identical, Drs. Kovalcik, Piryatinsky and Phillips converged upon substantially the same functional limitations as those adopted by the ALJ.  Moreover, those functional limitations were consistent with (and based upon) the

-11-

clinical evidence.  In making the RFC determination, the ALJ properly discharged his responsibility to decide issues of credibility, to draw inferences from the record and to resolve conflicts of evidence.  See Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991).  The RFC is supported by the medical opinions and the Court will not disturb it.

Plaintiff's contention that the RFC is inconsistent with the substantial evidence is unavailing.  In particular, Jones fails to articulate how the additional, allegedly unconsidered diagnoses would further restrict his RFC.  He contends that because the ALJ found him to possess certain mental impairments but "essentially adopted" the report of a doctor who did not so find, the RFC is inadequately restrictive or at least insufficiently reasoned.  The Court disagrees.  To the extent the diagnoses contain inconsistencies, their conflict does not compel a more restrictive RFC where none of the medical reports would call for it and where plaintiff has adduced no evidence of additional impairment beyond the diagnosis.

### 2. Vocational Expert Assessment

Jones raises two additional challenges to the ALJ's findings as to steps four and five.  They, too, are inadequate.

First, Jones asserts that the ALJ relied upon a report of a vocational expert which was predicated on a flawed RFC.  That

contention fails because, as explained above, the RFC is valid and supported by substantial evidence.

Second, Jones avers that the ALJ's classification of his past work for United Parcel Service as past relevant work was error because it was too brief to constitute substantial gainful activity, as that term is used in 20 C.F.R. § 404.1550.  Jones acknowledges, however, that the issue is not "case-determinative" and the Court agrees.  Regardless of whether Jones's prior work was "substantial gainful activity" to which he could return, the ALJ correctly found that Jones could perform other jobs that existed in the national economy. Therefore, the Court need not address the issue further.  See Ward v. Comm'r of Soc. Sec., 211 F.2d 652, 656 (1st Cir. 2000) (stating that "remand is not essential if it will amount to no more than an empty exercise").

### ORDER

For the foregoing reasons,

1) plaintiff's motion for an order reversing the Commissioner's decision (Docket No. 16) is **DENIED;** and

-14-

2) defendant's motion to affirm the Commissioner's

decision (Docket No. 17) is **ALLOWED**.

**So ordered.**

                                                   /s/ Nathaniel M. Gorton
                                            Nathaniel M. Gorton
                                            United States District Judge

Dated January 5, 2022.